Horowitz Bros. & Margareten v. Commissioner.
Horowitz Bros. & Margareten v. Commissioner
Docket No. 24055.
United States Tax Court
1951 Tax Ct. Memo LEXIS 152; 10 T.C.M. (CCH) 698; T.C.M. (RIA) 51228; August 3, 1951
*152 David B. Chase, Esq., for the petitioner. Sheldon V. Ekman, Esq., for the respondent. TURNER Memorandum Opinion TURNER, Judge: The respondent determined a deficiency in income tax against the petitioner for the fiscal year ended July 31, 1945, of $13,449.34. The question is whether the petitioner is entitled to a loss deduction for the involuntary conversion in condemnation proceedings of its land and buildings and at the same time is entitled, under section 112 (f) of the Internal Revenue Code, to the non-recognition of gain computed separately on fixtures converted by the City of New York in the same condemnation proceedings. The facts have been stipulated, and are found as stipulated. [The Facts] Petitioner is a New York corporation, with its principal place of business located at Long Island, New York. It filed its return for the period involved with the Collector of the Second District of New York. Since its organization in 1910, petitioner has been engaged in the business of baking certain food products, principally unleavened bread (matzoths) and noodles. On and prior to January 31, 1944, it carried on its business at a baking *153 and manufacturing plant at East Fourth and Lewis Streets in New York City. Pursuant to a resolution adopted by the Board of Estimate of the City of New York on January 6, 1944, the City of New York, hereinafter referred to as the City, made application to the Supreme Court of the State of New York for an order authorizing condemnation of certain real property within the area bounded by Avenue D, East Sixth Street, East River Drive and Houston Street, in the Borough of Manhattan. This application was made by the City on behalf of the New York Housing Authority, in order to acquire title to the property within that area as the site for the public housing project known as the Lillian Wald Houses. On January 31, 1944, by order of the Supreme Court authorizing condemnation, title to the entire site was vested in the City. Petitioner's plant was situated within the area condemned and acquired, and was located on the premises described on the damage map in the condemnation proceeding as Damage Parcel No. 98 and Damage Parcel No. 96. Prior to January 31, 1944, petitioner was the owner in fee simple absolute of Damage Parcel No. 98, including the nine buildings thereon and certain fixtures *154 and machinery installed therein by petitioner. The fixtures included, among others, baking machinery and equipment used by petitioner in its business. On Damage Parcel No. 96, there was located a single brick building which petitioner occupied under a lease, the term of which expired on September 1, 1946. Petitioner had installed certain fixtures and machinery in that building, which it used in its business. In respect of the individual items of those fixtures and machinery, petitioner computed its allowance for depreciation over the actual useful life of those items, or the remaining leasehold term, whichever was shorter. On February 24, 1944, and on March 4, 1944, petitioner filed claims in the Supreme Court condemnation proceeding, demanding just and lawful compensation for the fee interest in Damage Parcel No. 98, and for the fixtures in both Damage Parcels Nos. 96 and 98. On June 22, 1944, the Supreme Court rendered its decision making awards to the several claimants in the condemnation proceeding. Its awards with respect to petitioner were as follows: Damage Parcel No. 98 - Land $32,965, improvements $85,000. The following awards are made for fixtures: Damage Parcel *155 No. 98 - Horowitz Bros. & Margareten, $55,000. Damage Parcel No. 96 - The disputed items, including the elevator, sprinkler system and kindred items, are awarded to the landlord as they are building items. The final decree of the Supreme Court in the proceeding was signed and filed on December 11, 1944, and provided for the payment of awards to petitioner in respect of Damage Parcel No. 98 in the amount of $117,965 for land and improvements and in the amount of $55,000 for fixtures. No appeal was taken from the decree, and the time within which an appeal might be taken expired on January 11, 1945. The award of $55,000 for fixtures represented an award to petitioner for all its fixtures other than those which were to be removed as articles of personal property. Petitioner received no award, nor was it otherwise compensated for the fixtures and machinery which it had installed on the property leased by it. Petitioner's adjusted basis, as of January 31, 1944, for the fixtures and machinery on Damage Parcel No. 96 amounted to $4,956.56. On February 7, 1945, petitioner received two checks from the City in the amounts of $122,774.09 and $57,242.19, respectively. The first check was *156 in payment of the award of $117,965 for petitioner's land and improvements, Damage Parcel No. 98, plus interest thereon from January 31, 1944, in the amount of $4,809.09. The second check was in payment of the award of $55,000 for petitioner's fixtures on Damage Parcel No. 98, plus interest thereon from January 31, 1944, in the amount of $2,242.19. Petitioner executed and delivered to the City a separate receipt for each of the checks. The interest on the two awards, amounting to $7,051.28, was reported by petitioner as ordinary income for its fiscal year ended July 31, 1945. At all times relevant herein, and particularly during petitioner's taxable year ended July 31, 1944, and prior to January 31, 1944, petitioner maintained on its books of account separate asset and reserve for depreciation accounts for each of the several items of fixtures and machinery taken by the City, separate and apart from its asset and reserve for depreciation accounts for each of its building improvements. As of January 31, 1944, the date of vesting of title in the City, petitioner's adjusted basis for determining gain or loss in respect of its property was as follows: Land and Improvements (Damage
Parcel No. 98)
Land
$ 95,663.58
Improvements
34,221.94
Fees and expenses
6,896.12
Final adjusted basis
$136,781.64
Fixtures (Damage Parcel No. 98)
Adjusted basis
$ 2,438.50
Fees and expenses
3,886.60
Final adjusted basis
$ 6,325.10
Fixtures (Damage Parcel No. 96)
Final adjusted basis, as herein-
above stated
4,956.56
*157 Petitioner segregated the fixtures award in respect of Damage Parcel No. 98 in the amount of $55,000 in a separate bank account and made application, under date of October 5, 1945, to the Commissioner of Internal Revenue for permission to establish a replacement fund in its account in which the entire $55,000 award would be held. Upon approval of the application by the Commissioner, petitioner established the replacement fund and, as required, furnished an approved surety bond in the amount of $17,100. Petitioner expended the entire amount held in the replacement fund to replace the fixtures similar or related in use or services. The fund was expended prior to November 8, 1946, as required by the Commissioner, in granting petitioner permission to establish the replacement fund. In June 1944, petitioner purchased a new plant building and land, located at its present address in Long Island City. On or about January 2, 1946, petitioner duly filed a refund claim for an overpayment of its excess profits tax for the taxable year ended July 31, 1944. Petitioner filed its income and declared value excess profits tax return and its excess profits tax return for that taxable year on *158 or about November 26, 1944. The following statement appears in petitioner's return for the year ended July 31, 1945: "SCEDULE 2, LOSS FROM CONDEMNATION OF REAL ESTATE: On January 31, 1944 the City of New York seized by condemnation all of the taxpayer's plant land, buildings and improvements located at East Fourth Street and at Lewis Street in New York City. On February 7, 1945 the sum of $122,774.09 was received from the City of which $117,965.00 was an award for the real estate and $4,809.09 was interest. The interest is reported herein as fully taxable income in item 7, page 1 of Form 1120. This involuntary conversion resulted in a loss as follows: Book value of real es-
tate condemned
Cost
$273,366.83
Reserves for depre-
ciation
138,524.75
$134,842.08
Expenses in connection
therewith: Legal fees
$ 6,138.71
Appraisal fees and
expert testimony
750.00
Other disbursements
7.41
6,896.12
Total
$141,738.20
Less: Award
117,965.00
Net loss from involun-
tary conversion
$ 23,773.20"
In disallowing the loss deduction the respondent made the following explanation: "(d) It is held that you realized neither a taxable gain nor a deductible *159 loss from the condemnation of your property. Accordingly, the amount of $23,773.20 claimed as a loss in respect thereof is disallowed." Petitioner's loss from the condemnation of its land, buildings and improvements, Damage Parcel No. 98, was $18,816.64. Under section 112 (f) of the Internal Revenue Code, [1] it is provided that where property is involuntarily converted into money through condemnation and the conversion results in the realization of gain, but the money is forthwith expended in the acquisition of other similar property or is used to establish a fund for the replacement of the property taken, then the gain so realized through such conversion is not recognized for tax purposes. If, however, the conversion of the property results in a loss, the loss is recognized. In the instant case, the New York Supreme Court made separate awards on land, improvements and fixtures. On the basis of the awards so made, the petitioner has treated the property, or properties, condemned as three separate and distinct properties, (1) land and improvements on Damage Parcel *160 No. 98; (2) fixtures on Damage Parcel No. 98; and (3) fixtures on Damage Parcel No. 96, both for the purpose of computing gain or loss from the condemnation and for the purpose of applying section 112 (f). So posed, it claims that the instant case is controlled by The International Boiler Works Co., 3 B.T.A. 283. *161 If the case is as posed by the petitioner, the claim that the Boiler Works Co. case is in point, seems to be well founded. In that case, the taxpayer, through fire, lost its factory and the machinery and equipment therein. The building and the machinery and equipment had been separately insured and the liability of the insurance company for the losses thereon was separately adjusted. The result was comparable to the result here. The taxpayer realized gain on its machinery and equipment and sustained a loss on the destruction of its building. In computing its loss or losses, the taxpayer dealt with the factory and the machinery and equipment separately and at all times segregated the amounts received under the different policies for the different properties, for the purpose of applying section 234 (a) (14) of the Revenue Act of 1921, which, for the purposes here, corresponds to section 112 (f), supra. With respect to the gain shown on the machinery and equipment, its claim was comparable to that of the petitioner in the instant case. As the petitioner has done here, it also treated the loss on its factory building as being separate and apart from the gain realized on its machinery *162 and equipment. In that case, the Board of Tax Appeals sustained the taxpayer in its view of the case and treated the conversions as being conversions of different properties. Whether of controlling importance, this case in one respect does differ factually from that of the Boiler Works Co., and, conceivably, another factual difference did exist. There the loss was a loss by fire and the recoveries were made on separate insurance contracts, whereunder the parties had treated the factory building and the machinery and equipment as separate properties, and, so far as appears, the machinery and equipment in that case was made up of movable machinery and equipment, as contrasted with built-in fixtures. In the instant case, the conversion, as related to petitioner, was a single condemnation proceeding, and we have no reason to conclude on the facts stipulated that the fixtures on which the awards were made were other than built-in fixtures and, in reality constituted a part of the real estate. In a number of decided cases, it has been held that in determining whether gain or loss resulted from *163 the condemnation of property, the condemnation must be dealt with as a single transaction and may not, for the purpose of determining the gain realized or the loss sustained, be broken up into component parts. See Christian Ganahl Co. v. Commissioner, 91 Fed. (2d) 343; certiorari denied, 302 U.S. 748; and Carrano v. Commissioner, 70 Fed. (2d) 319. In Christian Ganahl Co., the taxpayer was the owner of four separate but adjoining lots located in Los Angeles. Parts of two of the lots were taken under condemnation proceedings for street extension purposes and awards were made for the land taken. In the same proceedings, the benefits which would accrue to the remainders of the two lots and to the two adjoining lots by reason of the proposed street construction were levied and applied as set-offs against the awards made for the parts taken from the two lots. There the court said that for the purpose of determining the gain which resulted from the condemnation, the condemnation was to be treated as a single transaction and the four lots were to be treated as a unit, and could not be dealt with separately. If the holding in that case should be found *164 to be applicable here, then it would appear that the petitioner would not only lose on its claim for deduction of loss, by reason of the condemnation of the land and buildings, but would be held to have been the recipient of taxable gain, in view of the fact that if the land and buildings and the fixtures on the two parcels of property be treated as one property and the condemnation thereof as a single transaction, for the purpose of computing gain or loss, the over-all result on the facts here was a realization of gain amounting to $24,901.70. It is true the petitioner did, as to the $55,000 allocated to the fixtures on Parcel No. 98, establish a replacement fund, under section 112 (f). As to the remaining $117,965, however, the requirements of section 112 (f) were not complied with, and in view of the fact that the latter amount exceeded the amount of the gain, all of the gain realized by the petitioner, if the condemned property or properties be treated as one and the condemnation be treated as a single transaction for the purpose of computing gain, would be recognized. The respondent, however, has made no such determination and has raised no such issue in his pleadings. While, *165 on brief, he has suggested that the argument above posed, he is still claiming that only enough of the gain computed separately on the conversion of the fixtures on Parcel No. 98 be applied to absorb the losses claimed on the land and buildings and the fixtures on Parcel No. 96. The net result of such disposition of the case would be that the petitioner would still be allowed the benefits of section 112 (f) as to the gain realized on condemnation of the fixtures on Damage Parcel No. 98, treated as a separate property and as a separate transaction, except so much as would be necessary to absorb or eliminate the claimed deductible loss. Such being the posture of the case, it appears to us evident that the respondent's position is untenable. Either the property was a single property, and not different properties, and gain or loss must be computed on the condemnation as one transaction, as in Christian Ganahl Co., supra, or it must be as the petitioner claims. Neither of these is the respondent's case. On the question presented and the agreed record on which the case was submitted, the claim of the petitioner is sustained. What might have been our decision if the issue raised *166 had been otherwise, we do not decide. Decision will be entered under Rule 50. Footnotes
1. SEC. 112. RECOGNITION OF GAIN OR LOSS. * * *
(f) Involuntary Conversions. - If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain).↩